UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ZAINAB HAKIM, et al.

                Plaintiffs,

v.

REGENTS OF THE UNIVERSITY OF
MICHIGAN, et al.,

                Defendants.

_____/

Case No. 2:25-cv-11265

HONORABLE STEPHEN J. MURPHY, III

## ORDER GRANTING IN PART AND
## DENYING IN PART DEFENDANTS' MOTION TO DISMISS [31]

Plaintiffs, current and former students of the University of Michigan, were terminated from their employment with the University and banned from future employment within the University system. Plaintiffs then sued the Regents of the University and other University officials in their official and individual capacities for First Amendment and Due Process violations. ECF No. 23. Plaintiffs alleged that the University retaliated against them and violated their Due Process rights when it disciplined them following their involvement in pro-Palestinian protests in 2023 and 2024. Defendants moved to dismiss the complaint in its entirety. ECF No. 31. The Court heard oral argument on the Motion on December 17, 2025. For the following reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.

## BACKGROUND

Plaintiffs are current and former students of the University of Michigan who were employed by the University in a variety of roles. After the October 7, 2023

attacks on Israel by Hamas, college campuses throughout the United States saw an increase in protests. The University of Michigan was no exception. The student-plaintiffs here (who were also University employees) protested as "advocates of Palestinian human rights" and demanded that the University "divest[] from Israel." ECF No. 33, PageID.799.

The disciplinary actions taken by the University against the students stemmed from two principal protests. Whether or not they engaged in violent conduct is sharply disputed by the parties. But because this is a motion to dismiss, the Court will accept and set out the facts as alleged by Plaintiffs.

I.   <u>November 17, 2023 Protest at the Alexander G. Ruthven Building</u>

The first protest occurred on November 17, 2023 at the Ruthven Building on UM's Ann Arbor campus. Plaintiffs Hassaballa, Chappell, and Elkolaly attended. There, they allegedly participated in a peaceful sit-in to call for divestment from Israel. The students hoped to meet with UM's then-President, Santa Ono, to discuss divestment from "Israel and from companies complicit in violating the human rights of Palestinians." According to Plaintiffs' account, once inside, the students "sat in a circle, and sang peace songs." In what Plaintiffs allege was an "unprecedented break from [the University's] previous policies and practices," the University called in more than ten "law enforcement departments to close the building and remove the students." Forty-two students were arrested, and students who were given written citations were allowed to leave. According to Plaintiffs' allegations "[n]one of the students engaged in acts of violence" nor did they intend to damage school property.

Instead, Plaintiffs alleged that several students were injured by "overly aggressive police tactics." ECF No. 23, PageID.396–397. At the time of the protest, Plaintiffs Elkolaly, Chappell, and Hassaballa were employed at the University but were not on the clock. ECF No. 23, PageID.398–399.

II.     Alleged Retaliation Against Hassaballa, Chappell, and Elkolaly

After the protest at Ruthven, the University brought student disciplinary proceedings against the three students for violating the Statement of Student Rights and Responsibilities. *Id.* at PageID.399. The University alleged that the three Plaintiffs obstructed University operations and failed to comply with lawful requests to leave a controlled premises. *Id.* at PageID.399–400.

Nine months after the protest, in August 2024, Plaintiffs Hassaballa, Chappell, and Elkolaly alleged that Defendants Regents, Ono, Chatas, Holcomb, "and/or" Grier initiated employment actions against them because of their participation in the protest at the Ruthven Building. ECF No. 33, PageID.800; ECF No. 23, PageID.401. The same Defendants allegedly terminated Plaintiffs' employment and/or permanently banned them from being rehired within the entire University of Michigan system. ECF No. 33, PageID.801. The employment action proceedings— seemingly led by Defendant Grier and upheld by Defendant Chatas—resulted in their discharge and permanent rehire ban being upheld. *Id.* Plaintiff Hassaballa was also terminated from a volunteer position based on her permanent rehire ban. ECF No. 23, PageID.405. At the time, Plaintiffs Hassaballa and Elkolaly were no longer students, and they were not employed at the University. *Id.* at PageID.401, 412.

III.    May 3, 2024 Protest at the University of Michigan Museum of Art

The second protest occurred outside of the University of Michigan Museum of Art ("UMMA") where students held an "impromptu protest" to speak out against the "ongoing genocide in Gaza and [to] call on the Regents to divest from Israel." ECF No. 23, PageID.415. The Regents were attending an event at the Museum during the protest. *Id.* Plaintiffs Hakim, Mackeen-Shapiro, Ali, Eidy and Rhoades attended the protest. *Id.* at 416. The complaint alleged that the five Plaintiffs stood on the public sidewalk, "chanted for a free Palestine," and complied with orders from the police. *Id.* At the time of the protest, only Ali was employed by the University—the other four students were not. *Id.*

IV.    Alleged Retaliation Against Hakim, Mackeen-Shapiro, Ali, Eidy and Rhoades

Eleven months after the protest at the Museum, in April 2025, Defendants Regents, Ono, Chatas, Holcomb, "and/or" Grier initiated employment actions against Plaintiffs Hakim, Mackeen-Shapiro, Ali, Eidy, and Rhoades. ECF No. 33, PageID.801. Like the other students, these Plaintiffs contested the disciplinary proceedings, but the decisions were ultimately upheld. *Id.* Plaintiff Hakim, then a full-time employee, was terminated from her position and deemed ineligible for rehire. ECF No. 23, PageID.419. The other four students had also gained University employment by the time of the employment actions, and they were similarly terminated from their respective positions and banned from rehire. *Id.* at PageID.420–430. Plaintiffs alleged that Defendants Ono, Chatas, Holcomb, "and/or" Grier upheld and gave final approval for the adverse employment actions. *See, e.g.*, *id.* at PageID.430.

V.     Alleged Retaliation Against Plaintiffs for Filing the Instant Lawsuit

Finally, on July 1, 2025, two months after Plaintiffs sued, Plaintiffs Ali, Eidy, and Mackeen-Shapiro received emails informing them that the University was initiating new employment proceedings against them. According to Plaintiffs, the disciplinary proceedings "were initiated, approved, and/or requested by Defendants REGENTS, ONO, CHATAS, HOLCOMB, GRIER, HARMON, WESSEL, and/or GOLICH, jointly or individually." ECF No. 23, PageID.432. At that point, none of the Plaintiffs were University of Michigan employees as they had all been previously terminated and banned. *Id.*

VI.    Claims Asserted in the Amended Complaint

Plaintiffs brought seven counts against Defendants. In Counts I, II, and III, Plaintiffs alleged that Defendants violated their First Amendment rights to speech, association, and petition because Defendants terminated Plaintiffs' employment based on their speech in the November 17, 2023 protest or the May 3, 2024 protest. *See* ECF No. 23, PageID.434–441.

Count IV alleged violations of Plaintiffs' Due Process rights, namely, Plaintiffs' "property and/or liberty interest in public employment." *Id.* at PageID.441. Plaintiffs alleged that Defendants' actions denied them fair notice and an opportunity to be heard, present evidence, and have an impartial decision maker, and also that they failed to follow their own procedures. *Id.* at PageID442–443.

Count V also alleged violations of Plaintiffs' Due Process rights, namely their interests in "rights to free speech, assembly, and petition." *Id.* at PageID.444.

Plaintiffs alleged that in depriving them of their First Amendment Rights, Defendants were required to provide them with a pre-deprivation or "meaningful" post-deprivation hearing that complied with Due Process. *Id.*

Count VI alleged that Defendants violated the First Amendment because they retaliated against Plaintiffs for filing the lawsuit. Plaintiffs alleged that Defendants initiated "new student disciplinary proceedings" against the Plaintiffs only after they brought the instant suit. *Id.* at PageID.447.

In Count VII, Plaintiffs alleged that Defendants "conspired to deter and/or intimidate the Plaintiffs . . . from proceeding with this case by initiating the new student disciplinary proceedings." *Id.* at PageID.448–449.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case for "lack of subject-matter jurisdiction." "A motion under Rule 12(b)(1) to dismiss a complaint for lack of subject matter jurisdiction must be considered prior to other challenges since proper jurisdiction is a prerequisite to determining the validity of a claim." *Bowles v. Sabree*, No. 20-12838, 2022 WL 141666, at *3 (E.D. Mich. Jan. 14, 2022). Plaintiff has the burden of proving that jurisdiction exists. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "If the [C]ourt determines at any time that it lacks subject-matter jurisdiction, the [C]ourt must dismiss the action." Fed. R. Civ. P. 12(h)(3).

The Court may also grant a Rule 12(b)(6) motion to dismiss if the complaint fails to allege facts "sufficient 'to raise a right to relief above the speculative level,'

and to 'state a claim to relief that is plausible on its face.'" *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). The Court views the complaint in the light most favorable to the nonmoving party, presumes the truth of all well-pleaded factual assertions, and draws every reasonable inference in the nonmoving party's favor. Bassett v. NCAA, 528 F.3d 426, 430 (6th Cir. 2008). But the Court will not presume the truth of legal conclusions in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If "a cause of action fails as a matter of law, regardless of whether the plaintiff's factual allegations are true," then the Court must dismiss. *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).

Finally, "when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007). And "a court ruling on a motion to dismiss 'may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice.'" *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (emphasis omitted) (quoting *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003)).

## DISCUSSION

The Court will first address threshold arguments that Defendants raised in their motion to dismiss on claim splitting, ripeness, and sovereign immunity. Then

the Court will address qualified immunity for the Individual Defendants as well as the merits of each claim that Defendants moved to dismiss pursuant to Rule 12(b)(6).

I.     Threshold Issues

A. *Proper Materials Considered*

The parties disagree about the proper materials that the Court may consider on a motion to dismiss. Specifically, Defendants argued that police reports related to the demonstrations at issue, and correspondence between Defendants and the University, are "appropriately considered . . . because they are specifically referred to and central to Plaintiffs' claims, as demonstrated by their own allegations (which refer to the police reports they received)." ECF No. 34, PageID.846 n.3. Plaintiffs disagree because "none of [Defendants'] exhibits establish or are central to the Plaintiffs' Constitutional rights claims." ECF No. 33, PageID.805.

As the Court noted above, it can properly consider materials specifically referred to in the pleadings that are central to the claims at issue. *Com. Money Ctr., Inc.*, 508 F.3d at 335–36. It may also consider materials that are public records or records that can be judicially noticed. *Bailey*, 860 F.3d at 386. Indeed, as Defendants pointed out, many of the documents and police reports are mentioned in the complaint. *See* ECF No. 31-3 (Defendants' chart laying out each instance an incident report is mentioned in the complaint). And the Court finds that, contrary to Plaintiffs' arguments, incident reports and correspondence between the Defendants and the University are central to Plaintiffs' constitutional claims. Claims for First Amendment retaliation and the lack of due process necessarily depend on

Defendants' actions in response to Plaintiff's purported constitutionally protected conduct as well as the process Defendants' gave Plaintiff during disciplinary proceedings. But, while the parties agree on the existence of the documents, they disagree strongly on the contents and the conclusion that the Court should draw from them. *See, e.g.*, ECF No. 36, PageID.905 (Plaintiffs' counsel noting that it was "stunning" when videos of the incidents and police reports are put side by side); ECF No. 31, PageID.494 (Defendants' arguing that "Plaintiffs ignore the well-documented violent, threatening, and disruptive behavior each exhibited on University property").

Even if the Court could consider the documents referred to in the complaint, it "cannot consider the truth of *disputed* factual allegations contained in documents outside the pleadings." *Crawford v. Kohl's Inc.*, No. 5:21-119-DCR, 2021 U.S. Dist. LEXIS 174209, at *6 (E.D. Ky. Sept. 14, 2021) (citing *In Re Omnicare, Inc. Securities Litigation*, 769 F.3d 455, 467 (6th Cir. 2014)) (emphasis added) (citation omitted). The Court must take the allegations in the complaint as true and draw all reasonable inferences in favor of Plaintiffs at the Rule 12 stage. In other words, the Court will not, at this stage, wade into factual disputes between the parties like whether the students engaged in violent conduct. *See SoCal Powersports, Inc. v. Timken Co.*, No. 5:24-cv-2085, 2025 U.S. Dist. LEXIS 79815, at *12 (N.D. Ohio Apr. 28, 2025) (noting that while the Court may consider exhibits referred to in the complaint, it will "not consider statements in these documents for the truth of the matter asserted to resolve disputed allegations"); *see also Blackwell v. Nocerini*, No. 21-11712, 2024 U.S. Dist. LEXIS 229051, at *4 (E.D. Mich. Feb. 22, 2024) (denying motion for reconsideration

in part because the Court "exercised its 'complete discretion' to exclude defendants' police report and timeline of events because the report and timeline contain disputed factual content that cannot be considered at the motion to dismiss stage").

### B. Claim Splitting

Defendants argued that three Plaintiffs, Hassaballa, Elkolaly, and Chappell, impermissibly split their claims with another action in this district: *Hilgart-Grif, et al. v. Regents of the University of Michigan, et al.*, 2:24-cv-13425 (E.D. Mich. 2024) (Michelson, J.). Like here, the students in *Hilgart-Grif* sued the Regents of the University of Michigan, Santa Ono, and Martino Harmon. But the case also included Defendants Omar E. Torres, Grand River Solutions, Inc., and Stephanie Jackson who are not defendants here.

Claim splitting is a variant of the doctrine of res judicata. The difference is that claim splitting does not require a final judgment. But it does require that there be sufficient similarity between the underlying factual circumstances so that an eventual final judgment would bar a subsequent suit. *See Waad v. Farmers Ins. Exch.*, 762 F. App'x 256, 260 (6th Cir. 2019) (noting that the test for claim splitting examines "whether the first suit, assuming it were final, would preclude the second suit"). "Essentially, claim splitting is the same as res judicata, but with a presumption of a final judgment instead of an actual final judgment." *Id.*

Presuming a final judgment to be entered in *Hilgart-Grif*, the Court will look to federal claim preclusion rules because the two cases are federal lawsuits involving federal questions. *See Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 650 (6th

10

Cir. 2007); *see also Taylor v. Sturgell*, 553 U.S. 880, 891 (2008) ("The preclusive effect of a federal-court judgment is determined by federal common law."). Excepting the first factor because it assumes there is a final judgment on the merits, the Court looks to whether there is: "(2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997) (setting out the claim preclusion factors) (emphasis omitted). In sum, the claim splitting doctrine requires plaintiffs to "join all claims arising from the same set of facts in a single proceeding," and prohibits them from "split[ting] them across multiple fora." *Ellis v. Gallatin Steel Co.*, 390 F.3d 461, 479 (6th Cir. 2004).

Defendants raised claim splitting concerns regarding the claims of Hassaballa, Elkolaly, and Chappell for First Amendment retaliation and Due Process. ECF No. 31, PageID.527. As an initial matter, the parties are not all the same. Next, *Hilgart-Grif* involves similar claims. Plaintiffs in that suit, however, alleged that the University and other Defendants retaliated against them and failed to provide adequate process in *student conduct* proceedings. To be sure, as Defendants point out, some facts overlap. Both cases involve, at least in part, the same November 17, 2023 protest at the Ruthven Building. *Compare* ECF No. 23, PageID.395–399, *with Hilgart-Grif*, ECF No. 30, PageID.342–355. Here, however, the alleged First Amendment and Due Process claims arise out of Defendants' conduct in *employment*

11

proceedings, not student disciplinary proceedings. The facts thus do not arise out of the same factual situation and need not have been brought in the previous lawsuit.

At bottom, the underlying claims here are not the same and have to do with a distinct factual situation after the protest: actions the University took against Plaintiffs that affected their status as employees and their ability to work there in the future.

### C. Ripeness and Standing

Defendants argued that Plaintiffs' claims here are not ripe for two reasons: (1) Plaintiffs' claims, based on the University's decision to bar future employment, are devoid of an actual injury because they are "contingent on future harm that may not occur"; and (2) the Court lacks jurisdiction to hear Plaintiffs' retaliation claim in Count VI "until Plaintiffs have actually suffered an actionable adverse action." ECF No. 31, PageID.526.

Like standing, ripeness "is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 808 (2003) (internal quotations omitted). The Court considers two factors to determine whether Plaintiffs' claims are ripe for adjudication: (1) whether the claim is fit for judicial decision because it arises in a concrete factual context and concerns a dispute that is likely to come to pass; and (2) what the hardship is to the parties of withholding court consideration. *Warshak v. United States*, 532 F.3d 521, 525 (6th Cir. 2008)

Defendants argued that the complaint "is devoid of factual allegations showing an actual injury." ECF No. 31, PageID.526. True enough, Plaintiffs did not allege that they had specific future employment opportunities that Defendants' actions affected. But Plaintiffs also alleged a variety of "retaliation" or adverse actions taken by Defendants. *See, e.g.*, ECF No. 23, PageID.394. In fact, Defendants did not mention the most obvious alleged harm that led to the instant suit: the University terminated the students' present employment in addition to barring their future employment.

The harms alleged are not possible future injuries and they are not speculative or hypothetical. Rather, the alleged harms involve past adverse actions allegedly taken by Defendants to terminate Plaintiffs' roles as employees and a volunteer. Plaintiffs Chappell, Hakim, Mackeen-Shapiro, Ali, Rhoades and Eidy were all terminated in addition to being deemed ineligible for rehire. *Id.* at PageID.408, 419, 422, 424–425, 427, 430. Plaintiff Hassaballa was terminated from her volunteer work with the University. ECF No. 23, PageID.405. And the termination of volunteer work can suffice as an Article III injury even if there is no protected property interest. *Baker v. McDaniel*, No. 07-379-KSF, 2009 U.S. Dist. LEXIS 75562, at *15 (E.D. Ky. Aug. 24, 2009) (deciding First Amendment retaliation claim and noting that that "the fact that the plaintiffs were volunteers does not affect the First Amendment analysis"). Thus, with respect to the past harms alleged, the First Amendment and Due Process claims are obviously ripe and state Article III injuries.

As to Plaintiff Elkolaly, however, the Court agrees that her claims are not ripe. Elkolaly was not employed at the time she was made ineligible for rehire, nor was

she a student. *Id.* at PageID.412. She alleged that she planned to apply for post-graduate employment and graduate school in the future. *Id.* The University made her ineligible for rehire. *Id.* at PageID.413–414. Even assuming that the no-rehire decision could constitute a harm sufficient for standing, Elkolaly's claims are not ripe because she has not yet sustained any constitutional injury. She cannot rest on speculative future plans.

Mere "plans" to apply to graduate school and, if accepted, to work while in graduate school are not sufficient to constitute a live controversy at this time. Rather, to have a ripe claim that confers jurisdiction to the Court, Plaintiff must have "concrete plans." *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992). Plaintiff did not detail any concrete facts related to how the no rehire decision harmed her in graduate school applications or future employment plans. Elkolaly's claims at this point, based on the allegations in the complaint, did not allege sufficient facts for the Court to allow for an adjudication. Being made ineligible for rehire, by itself, does not establish a ripe claim based on mere allegations of non-specific intentions to apply for graduate school and, if accepted, to seek on-campus employment. Mere "someday" intentions are not sufficient to make a claim justiciable. *See Lujan*, 504 U.S. at 564 (explaining that "[s]uch 'some day' intentions -- without any description of concrete plans, or indeed even any specification of *when* the some day will be -- do not support a finding of the 'actual or imminent' injury that our cases require"). Because Plaintiff Elkolaly did not allege a concrete harm suffered or one that was "imminent" and

14

"certainly impending," *see Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013)), her claims are not ripe.

### D. Sovereign Immunity

Plaintiffs sued the university defendants in their individual and official capacities and sought both damages and equitable relief. Defendants argued that sovereign immunity bars all claims, but the Court disagrees. First, the damages claims are against the Defendants in their personal capacities, so sovereign immunity does not apply. Second, the *Ex parte Young* exception to sovereign immunity permits prospective equitable relief.

States are generally immune from private suits brought by their own citizens. *Alden v. Maine*, 527 U.S. 706 (1999). *See* ECF No. 23. The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In short, sovereign immunity shields states from private civil actions. *Josephson v. Ganzel*, 115 F.4th 771, 782 (6th Cir. 2024).

Sovereign immunity is "personal to the state and thus extends only to arms of the state itself." *Galette v. N.J. Transit Corp.*, 607 U.S. ___ (2026). To determine whether an entity is an arm of the state and is entitled to share the state's sovereign immunity, the Court asks "whether the State structured the entity as a legally separate entity." *Id.* Here, the University of Michigan is an arm of the state, not a separate legal entity, because, among other things, the Michigan Constitution

15

specifies its governance. *See* Mich. Const. art. VIII, § 5; *see also Kerchen v. Univ. of Mich.*, 100 F.4th 751, 761 (6th Cir. 2024) (citations omitted); *Ashford v. Univ. of Mich.*, 635 F. Supp. 3d 593, 600 (E.D. Mich. 2022), *aff'd*, 89 F.4th 960 (6th Cir. 2024). Thus, the University of Michigan is an arm of the state entitled to sovereign immunity—as are its officials when sued in their official capacities. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

There is, however, a narrow exception recognized in *Ex parte Young*, 209 U.S. 123 (1908), that permits "suits against state officials seeking equitable relief for ongoing violations of federal law." *Morgan v. Bd. of Pro. Resp. of the Sup. Ct. of Tenn.*, 63 F.4th 510, 515 (6th Cir. 2023) (quotation omitted). In other words, to fall under the *Ex parte Young* exception, the Court "need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Josephson*, 115 F.4th at 782 (quoting *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Plaintiffs asserted that they only brought claims for money damages against the Individual Defendants in their individual capacities. ECF No. 33, PageID.803. And Plaintiffs also admitted that they only seek declaratory and equitable relief against Defendants in their official capacities. ECF No. 33, PageID.826.

Turning then to the claims for injunctive relief against the Regents and the individuals in their official capacities, Defendants' argument for sovereign immunity fails. Under *Ex parte Young*, claims for reinstatement "are prospective in nature and appropriate subjects for *Ex parte Young* actions." *Carten v. Kent State Univ.*, 282 F.3d

16

391, 396 (6th Cir. 2002). And claims to expunge disciplinary records also seek prospective relief. *Ashford*, 89 F.4th at 969. Because Plaintiffs seek equitable, prospective relief, and not money damages against the Regents, or the other Defendants in their official capacities, sovereign immunity does not bar their claims. *See Doe v. Cummins*, 662 F. App'x 437, 444 (6th Cir. 2016) (collecting cases on prospective injunctive relief).

Defendants' argument that Plaintiffs "primarily seek retrospective relief" and therefore should not be permitted to seek equitable relief under *Ex Parte Young* ECF No. 31, PageID.505–506, is unpersuasive for two reasons. First, it is untrue. The prayer for relief requests injunctions (1) prohibiting Defendants from initiating speech-related adverse employment actions, (2) repealing adverse employment and volunteer eligibility actions taken against Plaintiffs, (3) reinstating Plaintiffs' proper statuses, and (4) requiring Defendants to cease new disciplinary and employment actions related to the lawsuit. ECF No. 23, PageID.450. Defendants only quoted the second request when claiming that Plaintiffs "primarily seek retrospective" relief. *See* ECF No. 31, PageID.506. But as explained above, the repeal claim functions much as a request for expungement, which is traditionally viewed as prospective. *See Ashford*, 89 F.4th at 969. Second, even if that specific part of the requested injunction were retrospective, it is one component of a larger whole that is undoubtedly prospective. Because Defendants instituted a rehire ban on Plaintiffs, repealing that ban would be necessary to accomplish the prospective relief of reinstatement Plaintiffs sought. Thus, the claims for injunctive relief are not barred by sovereign immunity.

II.    Qualified Immunity

All the Individual Defendants raised the defense of qualified immunity. Qualified immunity protects governmental employees from individual, civil liability if their conduct did not violate a "clearly established" constitutional right "of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015) (citation omitted). Usually, but not always, the earliest possible point is at summary judgment because "development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." *MacIntosh v. Clous*, 69 F.4th 309, 315 (6th Cir. 2023) (citation omitted).

To overcome a qualified immunity defense at the motion to dismiss stage, Plaintiff must plausibly allege facts "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)); *see also Cooperrider v. Woods*, 127 F.4th 1019, 1035–36 (6th Cir. 2025) (noting that, at the motion to dismiss stage, the plaintiff has the burden to overcome a qualified immunity defense).

To establish a § 1983 claim, a plaintiff must prove "that (1) a person, (2) acting under color of state law, (3) deprived [him] of a federal right." *Berger v. City of Mayfield Heights*, 265 F.3d 399, 405 (6th Cir. 2001). "Qualified immunity is an affirmative defense" to a § 1983 claim. *English v. Dyke*, 23 F.3d 1086, 1089 (6th Cir.

18

1994). It "'shields' public officials from money-damages liability if 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016) (quoting *Harlow*, 457 U.S. at 818).

Once a defendant asserts a qualified immunity defense, "Plaintiff bears the burden of showing that [a] defendant[ ] [is] not entitled to qualified immunity." *Maben v. Thelen*, 887 F.3d 252, 269 (6th Cir. 2018) (citing *Chappell v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009)). The Court must engage in a two-prong analysis—whether defendant committed a constitutional violation and whether the right was clearly established—and may ultimately decide which prong to analyze first. *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

## A.  Individual Defendants' Personal Involvement

Defendants argued that Plaintiffs "fail[ed] to explain how each [Defendant] committed specific acts that violate[d] their constitutional rights." ECF No. 31, PageID.508. The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what *each* defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citation omitted). When a party moves to dismiss a complaint based on qualified immunity, the analysis tracks how a Court would resolve a Rule 12(b)(6) motion to dismiss. *Crawford v. Tilley*, 15 F.4th 752, 764 (6th Cir. 2021). There,

19

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not enough to plead a claim. *Iqbal*, 556 U.S. at 678.

In other words, the Court must ensure there are detailed allegations as to each Defendant because "insubstantial claims against government officials should be resolved as early in the litigation as possible, preferably prior to broad discovery." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). And thus, Plaintiffs cannot rely on group pleading. Rather, allegations of personal involvement are paramount to surviving a motion to dismiss when qualified immunity is raised. *See id.* (explaining that "the allegations must demonstrate that each defendant officer, through his or her own individual actions, *personally* violated plaintiff's rights under clearly established law"); *Wiley v. City of Columbus*, 36 F.4th 661, 669 (6th Cir. 2022) ("When multiple defendants are named then § 1983 liability is analyzed individually based on an officer's own actions.").

### 1. Defendants Ono, Holcomb

Plaintiffs did not allege the personal involvement by Defendants Santa Ono or Richard S. Holcomb in any of the allegedly unconstitutional actions. Rather, throughout the amended complaint, Plaintiffs grouped Ono with other Defendants. For example, Plaintiffs alleged that "Defendants ONO, CHATAS, HOLCOMB, and/or GRIER, jointly or individually, initiated and executed adverse employment actions against Plaintiff ARWA HASSABALLA." *Id.* at PageID.401. Plaintiffs relied on the same pattern of using "and/or" for each allegation. Not once in the complaint was

20

there an allegation of a specific action taken by Ono or Holcomb. *See generally* ECF No. 23. The "and/or" language used is the essence of speculative pleading.

Plaintiffs cannot guess that either Defendant Ono or Defendant Holcomb was involved in unconstitutional conduct merely by pleading that it is possible they were involved. Conjecture of that sort is the type of threadbare speculation that the Court cannot countenance even at the early motion to dismiss stage. Plaintiffs' Counsel even recognized as much. *See* ECF No. 36, PageID.912 ("I would acknowledge that" Ono is one of "your toughest ones."). And Counsel's suggestion that "it's too early to kick them out at this point" and that "[w]e need discovery to know that" belies the doctrine of qualified immunity. *Id.* It is immunity from suit itself, not merely liability. While it is true that qualified immunity is often decided on summary judgment after more facts come out during discovery, Plaintiffs cannot merely allege hypothetical and speculative allegations against a Defendant to get to discovery. Because Plaintiffs did not allege any specific unconstitutional actions taken by Defendants Ono or Holcomb, they were not "personally involved," and therefore claims against them in their individual capacity must be dismissed.

2.  Defendant Chatas

While Plaintiffs did include the same "and/or" pleading with respect to Defendant Chatas, they also plead specific unconstitutional conduct. The amended complaint alleged that Defendant Chatas emailed Plaintiffs stating that their "case ha[d] been escalated to [him] for final review and determination." *See, e.g.*, ECF No. 23, PageID.409. 403. Taking the allegations as true, and resolving inferences in favor

of Plaintiffs, it is plausible that Defendant Chatas was involved in the termination decisions, had final authority to make a decision one way or the other, and therefore was involved in the allegedly unconstitutional conduct to deprive Plaintiffs of their First Amendment and Due Process rights. He thus may not be dismissed at this stage of the case.

### 3. Defendant Grier

Defendants acknowledge that Plaintiffs included specific allegations as to the personal actions Defendant Grier. ECF No. 31, PageID.509. The Court agrees that outside of the speculative "and/or" pleadings, Plaintiffs alleged that the hearings were "coordinated and facilitated by Girer" and that Grier was personally involved in reviewing evidence and communicating with students. *See e.g.*, ECF No. 23, PageID.406. The Court finds that it is plausible that Defendant Grier was personally involved.

### 4. Defendants Harmon, Wessel, Golich

Defendants Harmon, Wessel, and Golich were added as Defendants in the Amended Complaint for Counts VI and VII because of alleged retaliation against Plaintiffs Ali, Eidy, and Mackeen-Shapiro for filing the instant suit. Like Defendants Ono and Holcomb, Plaintiffs included Harmon, Wessel, and Golich in their new claims, but never alleged what actions any of them *personally* took. Instead, they merely alleged that "REGENTS, ONO, CHATAS, HOLCOMB, GRIER, HARMON, WESSEL, and GOLICH retaliated against Plaintiffs ALI, EIDY, and MACKEEN-SHAPIRO for bringing this lawsuit when they initiated new adverse employment

22

actions against these Plaintiffs." ECF No. 23, PageID.447. Speculative allegations like those quoted do not plead that any defendant took any particular action. Instead, Plaintiffs lumped them together and did not attempt to explain how they retaliated or conspired to violate Plaintiffs' First Amendment rights. A § 1983 action may not survive a motion to dismiss through group pleading. *See Garrett v. Morgan Cnty. Sheriff's Off.*, 792 F. Supp. 3d 771, 808 (N.D. Ohio 2025) (collecting cases holding that "references to a group of defendants are insufficient to allege specific actions on the part of individual defendants for purposes of a § 1983 individual capacity claim"). Thus, Defendants Harmon, Wessell, and Golich are entitled to qualified immunity.

### 5. Supervisory liability

Finally, Defendants argued that "Plaintiffs also cannot sue based solely on the Individual Defendants' supervisory status." ECF No. 31, PageID.510. The Court agrees that "respondeat superior liability does not exist under § 1983." *Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 955 (E.D. Mich. 2020). Thus, to the extent Plaintiffs plead a supervisory liability claim with respect to Defendants Ono, Chatas and Holcomb, the theory fails. Plaintiffs argued that those officials had the power to "direct, authorize, and approve conduct taken by U-M Human Resources Department," and therefore are "liable for their own conduct that encouraged or condoned the actions of their inferiors." ECF No. 33, PageID.830. Indeed, Plaintiffs must demonstrate that each Defendant "encouraged the specific incident of misconduct or in some other way directly participated in it." *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008). An argument that the defendants "are liable for

23

their own conduct that encouraged or condoned" their inferior actions falls short. Plaintiffs were required to make allegations of encouragement or condonation. Thus, to the extent Plaintiffs relied on a supervisory theory for a claim, the claim must fail.

6.  Claims surviving

Therefore, Defendants Ono, Holcomb, Harmon, Wessel, and Golich are entitled to qualified immunity for claims against them in their individual capacities. Defendants Chatas and Grier are the only Individual Defendants at this stage who are not entitled to qualified immunity and, accordingly, the only Defendants against whom Plaintiffs may recover damages.

B. *Violations of a Constitutional Right*

The next step of the qualified immunity analysis is determining whether Plaintiffs adequately alleged that Defendants violated a constitutional right.

1.  First Amendment Claims (Counts I, II, III)

As an initial matter, Plaintiff brought three separate First Amendment claims for retaliation based on their rights to speech, petition, and association all in the context of public employment. The Court will analyze them together because the same legal analysis applies. *Zerman v. City of Strongsville*, No. 1:04-cv-2493, 2006 U.S. Dist. LEXIS 70503, at *31 (N.D. Ohio Sept. 28, 2006) ("The Sixth Circuit analyzes retaliation claims under all clauses of the First Amendment pursuant to the standards developed for claims arising under the Free Speech Clause.").

Section 1983 "prohibit[s] [S]tate employees from violating a person's constitutional rights," including those guaranteed by the First Amendment. *Green v.*

24

*City of Southfield*, 925 F.3d 281, 284 (6th Cir. 2019). To establish a claim for First Amendment retaliation, Plaintiffs must show that (1) they engaged in constitutionally protected conduct; (2) Defendants took an adverse action against them "that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two— that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). Defendants argued that Plaintiffs cannot establish the first or third elements. ECF No. 31, PageID.511. The Court will consider them in turn.

i. Constitutionally Protected Speech

Defendants' argument that Plaintiffs' conduct was not protected is simple: the students engaged in violent and disruptive behavior and therefore their conduct is not protected by the First Amendment. *See* ECF No. 31, PageID.513. Defendants rely on the police reports referred to in the First Amended Complaint to establish that the students engaged in "incitement" and physically assaulted officers. *Id.* Defendants could be correct.

But as the Court noted above, at the motion to dismiss stage, it will not accept facts and characterizations in police or incident reports as true to contradict Plaintiffs allegations. Rather, the Court is required to take all well-pleaded facts as true and draw all inferences in favor of Plaintiffs. The complaint strongly denies that Plaintiffs engaged in any violent conduct. ECF No. 23, PageID.397; *see also* ECF No. 33,

25

PageID.809 n.3 ("Plaintiffs unequivocally maintain that their speech and conduct was not violent."). The Court must accept that denial.

For public employees, however, the first requirement—protected conduct—has extra steps. As public employees, plaintiffs must "show (1) that [their] speech was made as a private citizen, rather than pursuant to her official duties; (2) that [their] speech involved a matter of public concern; and (3) that [their] interest as a citizen in speaking on the matter outweighed the state's interest, as an employer, in 'promoting the efficiency of the public services it performs through its employees.'" *Handy-Clay v. City of Memphis*, 695 F.3d 531, 540 (6th Cir. 2012) (citing *Garcetti v. Ceballos*, 547 U.S. 410, 417–18 (2006)). "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Id.* at 543 (citing *Connick v. Myers*, 461 U.S. 138, 147–48 (1983)).

Based on the facts alleged in the complaint, Plaintiffs' speech was not made while any of them were working and the speech was part of a campus protest. The first prong is therefore satisfied. Next, both the Israel-Palestine and the Universities' polices towards the conflict were, and still are, matters of public concern. The second prong is satisfied.

Third, the Court must balance whether Plaintiffs' interests as citizens in speaking on the matter outweighed the state's interest, as an employer, in promoting the efficiency of its public services. The only argument Defendants made is that their interest in "efficient operations and maintaining order" outweighed Plaintiffs'

26

interest in "making statements, even of public interest, where plaintiffs exhibited disruptive and violent behavior." ECF No. 31, PageID.514. Defendants again fall back on their characterization of the events and not on what Plaintiffs alleged in the complaint. Because the Court cannot consider the argument, it fails. At the present stage, based on Plaintiffs' allegations that they engaged in peaceful campus protests, one at a university building and one at the campus art museum, on a matter of deep public concern unrelated to their employment, outside of work hours, Plaintiffs' statuses as public employees do not affect the Court's conclusion, at this stage, that Plaintiffs' conduct was protected.

### ii.   Adverse Action

The second element the plaintiffs must establish in a claim for First Amendment retaliation is that Defendants took action against them "that would deter a person of ordinary firmness from continuing to engage in that conduct." *Thaddeus–X*, 175 F.3d at 394. In the employment context, "[t]he term 'adverse action' has traditionally referred to actions such as discharge, demotions, refusal to hire, nonrenewal of contracts, and failure to promote." *Dye v. Office of the Racing Comm'n,* 702 F.3d 286, 303 (6th Cir. 2012) (quoting *Handy-Clay*, 695 F.3d at 545).

Defendants did not contest the second element. *See* ECF No. 31, PageID.511. The Court agrees that Plaintiffs adequately alleged that Defendants took adverse action through terminating their employment, no-rehire decisions and ending volunteer opportunities. *See Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724

27

(6th Cir. 2010). As alleged, those adverse decisions could chill or silence a person of ordinary firmness from future First Amendment activities.

### iii. Causal Connection

Plaintiff must also demonstrate a causal connection between elements one and two—that "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X*, 175 F.3d at 394. For "the same reason" that Plaintiffs could not establish protected conduct, Defendants also argued that Plaintiff cannot establish a causal connection. ECF No. 31, PageID.514. As the Court understands their one sentence argument, Defendants argue that the University's interest in efficient operations and maintaining order was the trigger of the adverse action. *See id.* But again, at the motion to dismiss stage, the Court must only determine whether Plaintiffs sufficiently pleaded a First Amendment retaliation claim.

Here, Plaintiffs plausibly alleged that their pro-Palestinian speech at the supposedly peaceful protests was the motivating factor for termination and other adverse actions. Even though Defendants argued and provided documents purportedly showing that the students were fired for violating university policy, not for protected speech, at this stage and at its most basic level, Plaintiffs alleged that they engaged in protests, were not violent, and ultimately suffered adverse employment action because of their protected conduct. The complaint also alleged that the University did not target other employees and/or students for engaging in similar conduct. Rather, they claimed it only disciplined those expressing pro-

28

Palestinian views. *See Paterek v. Vill. of Armada*, 801 F.3d 630, 647 (6th Cir. 2015) ("Circumstantial evidence, like the timing of events or the disparate treatment of similar individuals, may support [the] inference [of a retaliatory motive]." (alterations in original)). The allegations are therefore sufficient to allege a causal connection.

The Court, therefore, finds that Plaintiffs adequately stated a claim for Claims I–III.

### 2.  First Amendment Retaliation for Filing Lawsuit (Count VI)

Plaintiffs Ali, Eidy, and Mackeen-Shapiro brought a First Amendment Retaliation claim against Defendants Regents, Ono, Chatas, Holcomb, Grier, Harmon, Wessell, and Golich. ECF No. 23, PageID.446–448.  They alleged that after Plaintiffs brought the instant suit, Defendants then instituted "new adverse employment actions" against them post-termination. *Id.* at PageID.447. They alleged that Defendants referred Eidy, Ali, and Mackeen-Shapiro to the Office of Student Conduct Resolution in retaliation for their attempt to vindicate their First Amendment rights in federal court.

As the Court stated above, for a First Amendment retaliation claim, the Court looks to three prongs: (1) whether Plaintiffs engaged in constitutionally protected conduct; (2) whether Defendants took an adverse action against them "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) whether "there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus–X*, 175 F.3d at 394.

29

The filing of a lawsuit is protected speech, *Eckerman v. Tenn. Dep't of Safety*, 636 F.3d 202, 208 (6th Cir. 2010), and Defendants do not contest that point. Instead, Defendants argued that there was no adverse action to sustain a claim here, and that even if it was adverse, it "cannot be deemed retaliation, when in fact the proceedings are an example of the due process being afforded to Plaintiffs based on their violent and threatening behavior." ECF No. 31, PageID.517.

"In the context of public employment, an adverse action is one that would 'likely chill a person of ordinary firmness from continuing to engage in that activity.'" *Ryan v. Blackwell*, 979 F.3d 519, 525 (6th Cir. 2020) (quoting *Thaddeus-X*, 175 F.3d at 398). Adverse action "may include harassment or publicizing facts damaging to a person's reputation." *Fritz*, 592 F.3d at 724. Generally, whether conduct constitutes an adverse action is a question of fact. *See Bell v. Johnson*, 308 F.3d 594, 603 (6th Cir. 2002). If, however, any act results in nothing more than a "de minimis injury," the Court may dismiss the claim as a matter of law. *See id.* at 603, 606 (stating that "[i]t would trivialize the First Amendment to allow plaintiffs to bring First Amendment retaliation claims for any adverse action no matter how minor" (quoting *Thaddeus-X*, 175 F.3d at 397 (alteration in original) (citation modified)).

Initiating disciplinary proceedings would "likely chill a person of ordinary firmness from continuing to engage in that activity." *Thaddeus-X*, 175 F.3d at 397. Bringing additional disciplinary proceedings against a student after they filed a lawsuit related to prior employment proceedings would likely chill an ordinary person from seeking judicial intervention to vindicate constitutional defects in the initial

30

action. Of course, Defendants point to non-retaliatory reasons not based on Plaintiffs' speech for the new proceedings. But, at the motion to dismiss stage, the Court must accept all well-pleaded allegations as true. And Plaintiffs alleged that Defendants initiated new disciplinary proceedings because of the lawsuit.

The two cases Defendants cited do not support their argument. First, *Dixon v. University of Toledo*, 702 F.3d 269, 274 n.1 (6th Cir. 2012) did not analyze the adverse action requirement other than in a footnote: "[t]ermination is an adverse employment action." Second, *Ryan v. Blackwell*, 979 F.3d 519, 525 (6th Cir. 2020) held that a tenured professor who refused to resign and therefore was subjected to termination proceedings could not claim the proceedings were an adverse action because he was entitled to that under the Due Process Clause.

Here, however, Plaintiffs Ali, Mackeen-Shapiro, and Eidy alleged that they were already terminated, and only after they filed the instant lawsuit, they were subjected to new disciplinary proceedings. New student disciplinary proceedings, after adverse employment actions were taken, do not constitute part of the process Plaintiffs were entitled to as part of their employment. Therefore, based on the allegations in the complaint, Plaintiffs sufficiently alleged an adverse action for their First Amendment retaliation complaint.

3. Conspiracy to Intimidate Party for Filing Lawsuit (Count VII)

Plaintiffs fail to state a claim that Defendants conspired to intimidate them for filing the instant lawsuit. The allegations in the complaint are wholly conclusory and alleged no specific facts as to the crucial element of the claim: the conspiracy.

A civil conspiracy occurs when two or more persons agree to injure another person through an unlawful action. *Gerber v. Herskovitz*, 14 F.4th 500, 511 (6th Cir. 2021). A plaintiff must allege that: "(1) a single plan existed, (2) the defendants shared in the conspiratorial objective to deprive the plaintiff of his constitutional rights, and (3) an overt act was committed in furtherance of the conspiracy that caused injury." *Id.* (quotations and alterations omitted); *see also Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985). And conspiracy claims "must be pled with some degree of specificity." *Bickerstaff v. Lucarelli*, 830 F.3d 388, 400 (6th Cir. 2016); *Marvaso v. Sanchez*, 971 F.3d 599, 606 (6th Cir. 2020).

The only allegation made with respect to an alleged "conspiracy" is that "[a]ll the Defendants or a subset of two or more of the Defendants conspired to deter and/or intimidate the Plaintiffs ALI, EIDY, and MACKEEN-SHAPIRO from proceeding with this case by initiating the new student disciplinary proceedings and/or initiating the new adverse employment actions against these Plaintiffs." ECF No. 23, PageID.448–449.

In response to the motion to dismiss the conspiracy claim, Plaintiffs repeated roughly the same allegations that apply to their Count VI retaliation claim and then concluded that they "plead[ed] with particularity that these adverse actions were carried out via coordinated actions and agreement by the Defendants." ECF No. 33, PageID.817. The problem is that they never alleged which Defendants were part of the conspiracy, or what steps the Defendants took to form the conspiracy. Plainly,

32

there are no specific facts about a conspiracy, so Plaintiffs did not allege that one existed.

> 4. Procedural Due Process Claim (Property Interest in Continued Employment) (Count IV)

Plaintiffs argued that the employment proceedings violated their constitutionally protected procedural due process rights. The Due Process Clause of the Fourteenth Amendment forbids a State from depriving persons of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1, cl. 3. To state a procedural due process claim, a plaintiff must allege that: (1) they were deprived of a protected liberty or property interest; and (2) the deprivation occurred without adequate procedural protections. *Ingraham v. Wright*, 430 U.S. 651, 672 (1977); *Crosby v. Univ. of Ky.*, 863 F.3d 545, 552 (6th Cir. 2017).

> i. Property Interest

"Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). To have a protected property interest in employment, a plaintiff must demonstrate that they have a "legitimate claim of entitlement" to their position. *Crosby*, 863 F.3d at 552 (quoting *Bd. of Regents*, 408 U.S. at 577). And a "unilateral expectation" or "abstract need" of a plaintiff to continue in their work is not enough to rise to a legitimate claim of entitlement. *Id.* "A property interest can be created by a state statute, a formal contract, or a contract implied from the circumstances," as

well as "mutual understandings between the parties." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565, 567 (6th Cir. 2004).

The Court starts with the baseline rule in Michigan that employment is generally at-will. *See Rood v. Gen. Dynamics Corp.*, 444 Mich. 107, 116 (1993) (explaining that in Michigan, "[e]mployment contracts for an indefinite duration are presumptively terminable at the will of either party for any reason or for no reason at all"). The Court will address each source that purportedly gives Plaintiffs a property interest in their continued employment.

A policy or custom "can form the basis for a protected property interest." *Gunasekera v. Irwin*, 551 F.3d 461, 467 (6th Cir. 2009) (citing *Christian v. Belcher*, 888 F.2d 410, 417 (6th Cir. 1989)). And "[i]n the context of university employment, the Supreme Court has held that 'rules and understandings, promulgated and fostered by state officials' can form the foundation of a protected property interest." *Id.* (quoting *Perry v. Sindermann*, 408 U.S. 593, 602–03 (1972)).

Plaintiffs made a few arguments to support their claim that Defendants implied a protected property interest in their employment. First, they pointed to the allegation that U-M had never discharged or barred future employment status "for their lawful, off-the-clock speech." ECF No. 33, PageID.820. Second, student workers "reasonably believed" that their employment would continue "alongside their student status." *Id.* Finally, they pointed to University policy SPG 201.12 (supervisors involved in termination) and 201.08(II)(B) (University will consider alternative

34

resolutions before termination) for the proposition that their employment constituted property in which they had an interest. *Id.* at PageID.820–821.

First, the two sections of University policy that Plaintiffs point to have nothing to do with whether they had a protected property interest in continued employment. Neither supervisor involvement nor consideration of alternatives does anything to create a "just-cause" relationship. To that end, SPG 201.12, cited by Plaintiffs, defines "termination" as the "ending of the employment relationship at the initiative of the staff member or the University *for any reason*." ECF No. 31, PageID.522 (emphasis added). True enough, the Sixth Circuit, in finding a protected property interest, did rely on whether the defendant there had ever taken the course of action before. *Gunasekera*, 551 F.3d at 468. But unlike *Gunasekera*, Plaintiffs pointed to no custom, other than students' belief, modifying the employment into anything other than at will.

At bottom, Plaintiffs pointed to no state statute, contract, or custom that would modify the at-will presumption in Michigan. *Roth*, 408 U.S. at 577. The allegations point to no "legitimate claim" in continued employment. *Id.*

Plaintiffs also briefly raised the argument that they have a liberty interest in their reputation. But the complaint does not allege that Defendants made any public statements regarding Plaintiffs' employment, other than in response to the instant lawsuit. ECF No. 23, PageID.377. Plaintiffs therefore cannot establish a liberty interest in continued employment.

     5.   Protected Liberty Interest (Count Deprivation of Liberty Interest in Rights to Free Speech, Assembly, and Petition) (Count V)

35

In Count V, Plaintiffs asserted a Due Process Claim for the deprivation of their liberty interest in their rights to free speech, assembly and petition. ECF No. 23, PageID.444. Defendants argued that Count V was really a substantive due process claim, and because a more specific constitutional provision applied (i.e., the First Amendment), Plaintiffs could not maintain a "duplicative" claim to their First Amendment retaliation claim. ECF No. 31, PageID.525–526. In response, Plaintiffs argued that Count V was, instead, a separate procedural due process claim because they alleged they were "deprived of their liberty interest in their First Amendment Rights without proper notice, a meaningful hearing, and an impartial decisionmaker." ECF No. 33, PageID.823.

### i.  Liberty Interest

The difference between a substantive due process claim and a procedural due process claim is important. Unlike substantive due process claims, "[p]rocedural due process claims are concerned not with the deprivation of a constitutionally protected interest in 'life, liberty, or property,' but deprivation of those interests without due process of law." *Handy-Clay*, 695 F.3d at 546 (citation modified).

Despite Defendants' argument, "First Amendment rights may constitute a liberty interest under the Due Process Clause." *Kyrkanides v. Capilouto*, No. 5:21-cv-00270, 2023 WL 4748173, at *7 (E.D. Ky. July 25, 2023) (quoting *Jackson v. City of Columbus*, 194 F.3d 737, 749 (6th Cir. 1999), *abrogated on other grounds by Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)); *see also Adkins v. Board of Educ. of Magoffin County, Ky.*, 982 F.2d 952, 955 (6th Cir. 1993) ("Although [the plaintiff]

had no property right to continued employment[,] she had a liberty interest in not being denied employment for exercising her First Amendment right[s] . . .").

Here, because Plaintiffs adequately stated a claim under the First Amendment, they also alleged a deprivation of their liberty interest in their First Amendment Right. *See Jackson*, 194 F.3d at 749 ("Because we find that Jackson has stated a claim for a violation of his First Amendment right of freedom of speech with respect to the gag order, we hold that he has sufficiently alleged the deprivation of a liberty interest.").

### ii.   Proper Process Due

Because Plaintiffs established a protected liberty interest, they must also allege that they did not receive proper process. In the termination context, a public employee is entitled to "notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Buckner v. City of Highland Park*, 901 F.2d 491, 494 (6th Cir. 1990) (citing *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 310 (6th Cir. 1988)).

Defendants argued that Plaintiffs received adequate process. Most times, "the Constitution requires some kind of a hearing before the State deprives a person of liberty or property." *Jackson*, 194 F.3d at 749–50 (quoting *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). Due Process generally requires the consideration of three factors: (1) the nature of the private interest subject to official action; (2) the risk of erroneous deprivation under the procedures used, and the value of any additional or substitute procedural safeguards; and (3) the governmental interest, including the

burden any additional or substitute procedures might entail. *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976).

In the public employment context, the Sixth Circuit has held that an employee is entitled to "oral or written notice of the charges against him or her, an explanation of the employer's evidence, and an opportunity to present his or her side of the story to the employer." *Buckner*, 901 F.2d at 494 (citing *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304 (6th Cir. 1988)). "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546.

Even assuming that Plaintiffs were entitled to the same process as those employees with a protected property interest in their employment, the process alleged in the complaint was adequate. First, all Plaintiffs were provided with written notice of the complaints filed against them. *See, e.g.*, ECF No. 23, PageID.402, 406, 417, 420, 423, 426, 428. Second, the complaint admits that each Plaintiff was provided with the reason they were being terminated and/or made ineligible for rehire as well as evidence used in the decision. *See e.g., id.* at PageID.402. Finally, each Plaintiff received an opportunity to present his or her side of the story to their employer through some sort of hearing. *See, e.g.*, *id.* at PageID.402–403.

Plaintiffs made some arguments for why the process was inadequate, but those contentions all fail. First, Plaintiffs argued that Chappell, Hakim, Eidy Ali, Mackeen-Shapiro and Rhoades "were given just a few days' notice before being told of their termination and employment ban at a meeting with Defendant Grier." ECF No. 33,

38

PageID.824. Nowhere, however, do Plaintiffs point to a right to be informed weeks or months in advance of a termination decision, and the Court is not aware of one. Second, they argued that the notice was "deficient" because it did not list "possible penalties." *Id.* Similarly, the Sixth Circuit requires "notice of the charges against" a person. *Buckner*, 901 F.2d at 494. Again, Plaintiffs point to no caselaw that the notice must contain all the possible sanctions for discipline, and the Court is not aware of such a requirement.

Third, Plaintiffs argued that prior to termination, they were entitled to an explanation of the employer's evidence and an opportunity to rebut that evidence. Even assuming they were entitled to this process as at-will employees, the allegations demonstrate that the requirement was satisfied. Each Plaintiff received a letter that laid out the allegations against them. Except for Plaintiffs Hassaballa and Elkolaly (because they were no longer employed), each plaintiff was able to schedule a meeting with Defendant Grier. *See, e.g.*, ECF No. 23, PageID.407; *see also Loudermill*, 844 F.2d 304, 311 (6th Cir. 1988) (holding that an informal, in-office meeting between an employee and his supervisor satisfied the constitutional requirements for pre-termination due process).

Fourth, Plaintiffs took issue with the evidence presented at their post-deprivation hearings. *See* ECF No. 33, PageID.825. They argued that Plaintiffs Hassaballa, Chappel, and Elkolaly did not receive video evidence before or during the hearing and that the videos of Hakim, Mackeen-Shapiro, Eidy and Rhoades do not support the conclusion that Plaintiffs were violent. ECF No. 33, PageID.825. Post-

39

deprivation hearings, however, are not governed by certain rules of evidence, as long as the hearings were reasonable. *Farhat v. Jopke*, 370 F.3d 580, 596 (6th Cir. 2004). Here, each Plaintiff had access to, and some took advantage of, a post-deprivation hearing to appeal the University's HR determination. The fact that certain evidence was not admitted does not mean that the process due was not afforded. While Plaintiffs may disagree with conclusions drawn from the evidence, due process protections do not guarantee a certain outcome or decision, only a process.

Based on the allegations in the First Amended complaint and in the incorporated documents, Plaintiffs received adequate process. Though they may disagree with the processes and procedures, Defendants gave Plaintiffs all they were entitled to: notice, an "explanation of the evidence," and an opportunity to be heard.

C. Clearly Established Constitutional Violation

Last, at this juncture, Plaintiffs' First Amendment Claims alleged constitutional violations that were clearly established at the time of the alleged retaliation. "After a defendant has raised the defense of qualified immunity by a motion to dismiss . . . the burden of pleading facts which, if true, 'describe a violation of a clearly established statutory or constitutional right of which a reasonable public official, under an objective standard, would have known' rests on plaintiff." *Gregory v. Hunt*, 872 F. Supp. 476, 479 (W.D. Tenn. 1991) (quoting *Kennedy v. City of Cleveland*, 797 F.2d 297, 299 (6th Cir. 1986)). "A plaintiff can meet his burden under this prong by presenting caselaw 'with a fact pattern similar enough to have given fair and clear warning to officers about what the law requires.'" *Vanderhoef v. Dixon*,

938 F.3d 271, 278 (6th Cir. 2019) (quoting *Hopper v. Plummer*, 887 F.3d 744, 755 (6th Cir. 2018)). Although the case that a plaintiff cites "'need not be on all fours' with the instant fact pattern" the question at issue "must be so settled that 'every reasonable official would have understood that what he [was] doing violate[d] [the] right' at issue." *Id.* (citation modified).

In the Sixth Circuit, "there is no doubt that there is a clearly established constitutional right to speak, even as a government employee, on a matter of public concern regarding issues outside of one's day-to-day job responsibilities, absent a showing that *Pickering* balancing favors the government's particular interest in promoting efficiency or public safety." *Ashford*, 89 F.4th at 975. Taking the facts alleged in the complaint as true, Plaintiffs were speaking on matters of public concern outside of work hours and were disciplined in their employment because of their speech. And retaliating against public employees for their speech on matters of public concern violated clearly established constitutional law. Plaintiffs, therefore, at this stage, satisfied prong two of the qualified immunity analysis as to their First Amendment claim. Because the Court found that Plaintiffs did not state a claim for their Due Process claims, the Court need not analyze whether the alleged constitutional violation was clearly established.

## ORDER

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion to dismiss [31] is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Plaintiff Elkolaly's claims are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that claims against Defendants Ono, Holcomb, Golich, Harmon, and Wessel in their individual capacities are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Due Process Claims (IV and V) are **DISMISSED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Conspiracy Claim (VII) is **DISMISSED**.

**SO ORDERED.**

<u>s/ Stephen J. Murphy, III</u>
STEPHEN J. MURPHY, III
United States District Judge

Dated: March 31, 2026

42